UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    CASE NO: 00-6154-CR-DIMITROULEAS

    Plaintiff,

vs.

MARTIN ZARCADOOLAS,

    Defendant.

_____/



## MARTIN ZARCADOOLAS' MOTION TO SUPPRESS (1) RECORDINGS OF STATEMENTS AND TESTIMONY CONCERNING STATEMENTS MADE BY ZARCADOOLAS PURSUANT TO AUTHORIZATIONS FOR INTERCEPTION OF WIRE COMMUNICATIONS; AND (2) ALL EVIDENCE DERIVED AS A RESULT OF THOSE INTERCEPTIONS

Martin Zarcadoolas (Zarcadoolas), moves the court, pursuant to Federal Rules of

Criminal Procedure 12(b)(3), 41 (f); and 18 U.S.C. §2518(10)(a)/[1] and

---

[1]  18 U.S.C. §2518(10)(a) provides, in part, that

> any aggrieved person in any trial, hearing, or proceeding in or
> before any court . . . may move to suppress the contents of
> any wire or oral communication intercepted pursuant to this
> chapter or evidence derived therefrom, on the grounds
> that - -
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization . . . is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the
> order of authorization.
>
> Zarcadoolas is an "aggrieved person," which 18 U.S.C.
> §2510(11) defines as one "who was a party to any intercepted

(continued...)



CASE NO: 00-6154-CR-DIMITROULEAS

18 U.S.C. §2515,/[2] to enter an order suppressing and excluding any statements, or

testimony about any statements, made by Zarcadoolas that were intercepted as a result of

two court orders permitting the government to intercept wire communications.

Zarcadoolas also moves to suppress all evidence derived from the intercepted

conversations./[3]

Zarcadoolas seeks this order because (a) the application for the initial order did not

comply with 18 U.S.C. §2516; (b) the application was not amended immediately to seek

authorization to intercept conversations as to the particular offense, money laundering,

"that [was] or [was] about to be committed."/[4] 18 U.S.C. §2518(1)(b)(i); and (c) the

affidavit in support of the initial order contained information that was "stale," and

---

[1](...continued)
> wire, oral, or electronic communication or a person against
> whom the interception was directed."

[2]    18 U.S.C. §2515 states:

> whenever any wire or oral communication has been
> intercepted, no part of the contents of such communication
> and no evidence derived therefrom may be received in any
> trial . . . if the disclosure of that information would be in
> violation of 18 U.S.C. §§2510, et seq.

[3]    Testimony or evidence based upon an illegal wiretap may not be used against
an "aggrieved person." Gelbard v. United States, 408 U.S. 41 (1972).

[4]    Specifically, the government knew of violations of 18 U.S.C. §1956(h),
"conspiracy" to launder money, that was not a part of the original application, and the
government did not seek an amended intercept order "as soon as practicable," as required
by 18 U.S.C. §2517(5).

-2-

CASE NO: 00-6154-CR-DIMITROULEAS

therefore did not contain "probable cause for belief that an individual [was] committing, [had] committed, or [was] about to commit" a crime.  18 U.S.C. §2518(4)(a).

## **THE RELEVANT FACTS**

### 1. **Authorization**

On October 16, 1998, the government asked for, and received, an "Order Authorizing the Interception of Wire Communications."  Martin Zarcadoolas' name and telephone numbers were not mentioned in the government's "application" for the intercept order, or its thirty-seven page affidavit in support of the application; and the list of "crimes" the government expected the interceptees to speak about did not include "money laundering."  On November 19, 1998, the government sought, and received, authorization for an extension of the October intercept order./[5]

Both applications were signed by a local Assistant United States Attorney who claimed that - -

> The Attorney General . . . has specially designated the Assistant Attorney General of the Criminal Division and any Deputy Assistant Attorney General of the Criminal Division to exercise the power conferred on the Attorney General by [18 U.S.C. §2516] to authorize this application.  By special designation of the Attorney General . . . an appropriate official of the Criminal Division has authorized this application.  Attached to this application are copies of the

---

[5]   Both orders were signed by District Court Judge Wilkie D. Ferguson, Jr.

CASE NO: 00-6154-CR-DIMITROULEAS

Attorney General's order of special designation and the
Memorandum of Authorization Approving this Application.

Application for Interception of Wire Communications, p.2-3./[6]

Eighteen months after the intercept orders were signed, Zarcadoolas was indicted,

and discovered that, contrary to the government's assurances to Judge Ferguson that the

appropriate and statutorily-mandated person had authorized by the government to seek

the October 1998 intercept order, the government had not complied with 18 U.S.C.

§2516./[7]

Zarcadoolas asked the government to allow him to inspect the original

authorization order, but the government refused, until the court ordered the government

to allow Zarcadoolas to inspect it. As a result of that inspection Zarcadoolas now knows

---

[6]/    The application for "the continued interception of wire communications"
contains the same language.

[7]/    18 U.S.C. §2516 states in part:

> The Attorney General, Deputy Attorney General, Associate
> Attorney General, or any Assistant Attorney General, any
> acting Assistant Attorney General or any Deputy Assistant
> Attorney General in the Criminal Division specially
> designated by the Attorney General, may authorize an
> application to a Federal judge of competent jurisdiction for,
> and such judge may grant in conformity with section 2518 of
> this chapter an order authorizing or approving the interception
> of wire or oral communications by the Federal Bureau of
> Investigation, or a Federal agency having responsibility for
> the investigation of the offense as to which the application is
> made, when such interception may provide or has provided
> evidence of certain offenses.

-4-

:06154-WPD    Document 301    Entered on FLSD Docket 09/12/2000    F

that:

1. The "applications" are signed by a local Assistant United States Attorney;

2. The authorization for the local assistant to seek the initial intercept order is purportedly signed by "Frederick D. Hess, Director, Office of Enforcement Operations, Criminal Division" of United States Department of Justice;

3. The "Hess authorization" is not signed by Hess, but is "initialed" by a person who signed Hess's name;

4. The "memorandum" authorizing the initial intercept application, which was part of the entire "package" submitted to Judge Ferguson, appears to be a memo Hess sent to himself;

5. Hess does not have the statutory authority to authorize an intercept order;

6. The application for the initial order presented to Judge Ferguson did not contain an original (or even a copy of an original) "authorization" signed by someone that had authority to either apply for, or designate another person to apply for, the intercept orders; and

7. While there may be a properly signed and authorized letter of designation, it was not submitted to Judge Ferguson and was not made part of the government's application for the intercept order./[8]

---

[8] The government showed Zarcadoolas what purports to be a memorandum of authorization signed by a person that had the statutory authority to authorize the
(continued...)

-5-

CASE NO: 00-6154-CR-DIMITROULEAS

## 2. The Interceptions

Almost immediately after it began its intercept the government overheard

conversations about "money laundering." Instead of immediately amending its initial

application affidavit and seek permission to intercept those conversations, the

government waited a full thirty days before seeking that authorization.

## A.    THE INITIAL APPLICATION DOES NOT COMPLY WITH 18 U.S.C. §2516 AND THEREFORE THE INTERCEPT ORDERS ARE INVALID AND THE EVIDENCE DERIVED FROM THEM MUST BE SUPPRESSED/[9]

In United States v. Giordano, 416 U.S. 505 (1974), the Supreme Court upheld the

district court's suppression of wiretap evidence, evidence from an extension order and

"derivative evidence," because the applications for the orders were authorized by the

Attorney General's "executive assistant," a position not named in 18 U.S.C. §2516.

> Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications . . . The Act plainly calls for the

---

[8](...continued)

application for an intercept order, but that memorandum was never shown to Judge Ferguson. Zarcadoolas believes that the signature on the memo of authorization is a "rubber stamp" signature and therefore does not meet the requirements of 18 U.S.C. §2516(1).

[9]    18 U.S.C. §2515 prohibits the use of any part of the contents, or any evidence derived from the contents, or any conversation that has been intercepted in violation of the wiretapping statute.

CASE NO: 00-6154-CR-DIMITROULEAS

> prior, informed judgment of enforcement officers desiring
> court approval for intercept authority, and investigative
> personnel may not themselves ask a judge for authority to
> wiretap or eavesdrop. *The mature judgment of a particular,*
> *responsible Department of Justice official is interposed as a*
> *critical precondition to any judicial order.*

Giordano, supra at 515-516 (Emphasis added)./[10] See also United States v. Roberts,

477 F.2d 57, 59 (7th Cir. 1973) (Evidence suppressed when Attorney General's Executive

Assistant, who was not authorized to do so, authorized wiretap applications); and

United States v. Crabtree, 507 F.2d 1230, 1231-1232 (5th Cir. 1975) (same).

Here, it appears undisputed that the government did not, as it represented in its

initial application presented to Judge Ferguson, "attach[ ] . . . copies of the Attorney

General's order of special designation and the memorandum of authorization approving

[the] application," and Judge Ferguson did not have before him a valid "Memorandum of

Authorization" without it, the initial application did not meet the strict standard required

by 18 U.S.C. §§2516:

> The federal wiretap statute, . . . establishes a three-tiered
> procedure for obtaining authorization to intercept wire or oral
> communications. Strict adherence to these procedural steps is
> a prerequisite to issuance of a wiretap order. United States v.
> Giordano, 416 U.S. 505, 40 L.Ed.2d 341, 94 S.Ct. 1820
> (1990). First, a duly authorized law enforcement officer must
> obtain approval from the United States Attorney General or a

---

[10]    The Supreme Court also found it incredible that §2516 permits "the Attorney
General to delegate [her] authority at will, whether it be to [an] Executive Assistant or to
any officer in the Department other than an Assistant Attorney General. Giordano, supra
at 523.

CASE NO: 00-6154-CR-DIMITROULEAS

> specifically designated Assistant Attorney General in order to
> apply to a federal judge for a wiretap. 18 U.S.C. §2516(1).
> Second, once such approval is obtained, the officer must
> present to the judge a written application for a wiretap.
> 18 U.S.C. §2516(1), (3). Third, the judge must make certain
> enumerated findings and issue an ex parte order containing
> specified elements . . . .

United States v. Sorapuru, 902 F.Supp. 1322, 1326 (D.Colo. 1995).

In United States v. LaGorga, 340 F.Supp. 1397 (W.D.Pa. 1972), Aff'd, 530 F.2d

965 (3rd Cir. 1976), the court suppressed conversations intercepted pursuant to an

intercept order that, as here, relied on an improper authorization presented to the district

judge:

> On May 19, 1970 an application for an Order authorizing
> interception of wire communication was filed in this Court
> and an Order was signed on that date permitting the
> procedure. Attached to the application was a memorandum
> dated May 18, 1970 purportedly personally initialed by the
> Attorney General authorizing the submission of the
> application. On the strength of that memorandum,
> defendants' objections to the alleged lack of proper
> authorization required by 18 U.S.C. §2516 were overruled on
> December 28, 1971 . . . .
>
> On March 31, 1972, the United States Attorney filed an
> affidavit in the nature of a confession of error advising this
> Court that as of March 27, 1972 he had become aware of the
> fact that the memorandum dated May 18, 1970 had not
> actually been initialed by the Attorney General but that some
> other person had affixed the initials.
>
> The fact situation is the same as United States v. William
> Ciltal . . . where it was held that the lack of proper
> authorization required suppression of the wiretap evidence a

-8-

CASE NO: 00-6154-CR-DIMITROULEAS

similar Order will be entered [here].

United States v. LaGorga, supra at 1397. (Citations omitted).

Based on an incomplete application - - one that did not contain an authorization

from a person within the Justice Department that was permitted to designate his or her

authority to the local Assistant United States Attorney that sought the order, the

application was statutorily deficient and the interception order was invalid.

## B. ALTHOUGH THE GOVERNMENT HEARD CONVERSATIONS, IT NOW CLAIMS INVOLVED "MONEY LAUNDERING," IT DID NOT SEEK AUTHORIZATION TO INTERCEPT THOSE CONVERSATIONS "AS SOON AS PRACTICABLE"

18 U.S.C. §2517(5) states in pertinent part:

> When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications . . . intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization . . . the contents therefore, and evidence derived therefrom may be disclosed or used as provided [by subsections] when authorized or approved by a judge . . . where such judge finds in subsequent application that the contents were otherwise intercept in accordance with [this chapter]. *Such application must be made as soon as practicable.*

Id. (Emphasis added). Here, the government waited almost a month before it asked for

permission, in its extension application, to intercept conversations about money

laundering. That length of time was not "as soon as practicable." United States v.

Brodson, 393 F.Supp. 621 (E.D. Wisc. 1975), Aff'd., 528 F.2d 214, 216 (7th Cir. 1975)

-9-

CASE NO: 00-6154-CR-DIMITROULEAS

(government's violation of §2517(5) requires suppression because the government must

submit evidence of violations "as soon as practicable.").

## C. THE AFFIDAVITS IN SUPPORT OF THE APPLICATIONS DO NOT CONTAIN FACTS AND CIRCUMSTANCES THAT JUSTIFY THE ISSUANCE OF THE ORDERS

The "facts" relied on by the government in its affidavit in support of the initial

application does not supply the necessary probable cause to believe that the conversations

sought to be intercepted, will be intercepted, because the information in its supporting

affidavit is stale. The affidavit in support of the wiretap authorization is significant for

what it lacks - - specific dates on which the persons whose conversations the government

sought to intercept said or did anything that gave rise to the belief that a crime was

committed or was about to be committed. For example, the "facts and circumstances

establishing probable cause" section of the government's October 1998 "affidavit in

support of application" for the initial wiretap order, reports statements from confidential

sources that try to establish (actions) by the defendants to violate dozens of criminal

statutes. Yet, almost without exception, no dates are mentioned and the government,

throughout its affidavit, leaves the reader to speculate about the number of months before

the initial application was submitted, that the incidents that the government claims supply

the necessary probable cause, occurred.

> It remains a fundamental principal of search and seizure law
> that information furnished in an application for a search
> warrant must be timely, and that probable cause must exist at

-10-

CASE NO: 00-6154-CR-DIMITROULEAS

> the time the warrant issues . . . . A warrant application based
> upon stale information of previous misconduct is insufficient
> because it fails to create probable cause that similar or other
> improper conduct is continuing to occur.

United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984) (Citations and internal

quotation marks omitted)./[11] See also United States v. Tehfe, 722 F.2d 1114, 1119

(3rd Cir. 1983) ("Staleness" doctrine applies to wiretap applications); and United States

v. Hyde, 574 F.2d 856, 864 (5th Cir. 1978) ("Staleness is an issue which must be decided

on the peculiar facts of each case.").

<div style="margin-left:40%;">

Respectfully submitted,

DAVID G. VINIKOOR, P.A.
420 S. E. Twelfth Street
Fort Lauderdale, FL 33116
Tel: (954) 522-2500
Fax: (954) 522-7278

By: _____
    DAVID G. VINIKOOR

</div>

---

   [11]/   United States v. Bascaro, supra applied search warrant principles to the
defendant's challenges to the wiretap affidavit and authorization.

-11-