UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6154-CR-Dimitrouleas

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOSEPH ROTUNNO et al., | ) |
| | ) |
| Defendants. | ) |

### GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANT ZARCADOOLAS'S PRE-TRIAL MOTIONS AND DEFENDANT ROTUNNO'S MOTION IN LIMINE[1]

The United States of America by and through its undersigned attorneys hereby opposes defendants' pretrial motions as set forth below.

## FACTS

The instant case is the result of a two year task force investigation involving the use of court authorized wire interceptions over Rotunno's cellular phone from October 16 to December 19, 1998, the execution of several search warrants at locations utilized by the criminal enterprise to conduct its illegal gambling businesses and extortionate activities, and the placement of a

---

[1] The government responds here to Zarcadoolas's (1) Motion for a Bill of Particulars; (2) Motion to Dismiss Count 2; (3) Motion to Dismiss Count 5; (4) Motion for the Inspection and Copying of Tape Recordings and Transcripts of Conversations between Zarcadoolas and Albert Polito; (5) Motion to Exclude Tape Recordings, or Evidence of Conversations between Persons that Refer to "Marty;" and (6) Motion to Strike Irrelevant and Prejudicial Allegations and the Alias "Marty" from the Indictment, all found at Docket Entry 300, as well as (7) Zarcadoolas's Motion to Exclude Derogatory Characterizations from Tape Recordings [DE 302]; (8) Zarcadoolas's Request for Specific Kyles/Brady/Agurs/Giglio/Napue Material [DE 315]; and (9) Rotunno's Motion in Limine [DE 316].



high-level cooperating witness. On June 6, 2000, a federal grand jury returned a six-count indictment against Joseph Rotunno and seventeen others including Rotunno's co-movant Defendant Martin Zarcadoolas. The indictment charges Rotunno with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d) (Count 1), conducting an illegal gambling business in violation of 18 U.S.C. § 1955 (Count 2), conspiring to make and collect extortionate extensions of credit in violation of 18 U.S.C. §§ 892 and 894 (Counts 3 & 4), conspiring to commit money laundering in violation of 18 U.S.C. § 1956 (Count 5), and conspiring to sell and receive stolen property in violation of 18 U.S.C. § 2315 (Count 6).[2] Defendant Zarcadoolas is charged in each of these counts as well, with the singular exception of Count 6.

In sum, the underlying indictment charges that Rotunno is a known associate of the Colombo Organized Crime Family, and from at least 1997 to the present supervised, on the Colombo Family's behalf, its South Florida crew of criminal associates and their related activities, including racketeering, fraud, illegal gambling, extortion and money laundering, among other crimes. To that end, in or about 1997, Rotunno began coordinating and supervising the activities of several illegal gambling businesses located in and around South Florida. Defendant Zarcadoolas acted as an agent of Rotunno's illegal gambling businesses and would place the bets of his underlying clientele with gambling offices, including those controlled by Rotunno and other co-conspirators.

In addition, one of Rotunno's primary roles as supervisor of the South Florida crew was

---

[2] The substantive offenses enumerated in Counts 2 through 6 of the Indictment also make up the pattern of racketeering activity alleged under the RICO Conspiracy charged in Count 1.

to collect either by himself or through other criminal associates, the gambling losses from bettors. He facilitated this collection by converting bettor losses into extortionate extensions of credit or loans at usurious rates averaging 3% interest per week, or 156% per annum. Initially, the bettors would make payments towards their loans by providing cash or checks to co-defendant Percy Morris, aka Tiny, who functioned as Rotunno's strong-arm collector, and who in turn, would deliver the proceeds to Rotunno. When unable to pay, Rotunno personally threatened victims and instructed Morris to threaten harm, if necessary, to ensure the collection. To collect the loses incurred by his betting clientele, Zarcadoolas engaged the extortionate services of Rotunno. Lastly, the proceeds of these gambling losses and extortionate collections were laundered by Rotunno, Zarcadoolas and others through the check cashing store of co-defendant Kaiser Akel.

## LEGAL DISCUSSION

### I. THE INSTANT INDICTMENT AND DISCOVERY PROVIDED TO DEFENSE COUNSEL SUFFICIENTLY INFORM DEFENDANTS OF THE NATURE OF THE CHARGES AGAINST THEM.

Defendant Zarcadoolas moves this Court for a bill of particulars identifying those persons not named in the indictment who were otherwise associated with the defendant's criminal activity. Defendant's request is an impermissible attempt to gain additional discovery and should be denied by the Court.

A bill of particulars serves three purposes: (1) to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, (2) to avoid and minimize the danger of surprise at trial, and (3) to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense. United States v. Birmley, 529 F.2d 103, 108

(6th Cir. 1976). A bill of particulars is not a discovery device and is not designed to afford the defense a detailed preview of the government's case or to tie the prosecutor in advance of trial developments to proof of particular events by particular witnesses. United States v. Perez, 489 F.2d 51, 70-71 (5th Cir. 1973); Hickman v. United States, 406 F.2d 414, 415 (5th Cir. 1969). As such, a bill of particulars may not be employed by the defendant to secure information as to the government's legal theories. United States v. Gabriel, 715 F.2d 1447, 1449 (10th Cir. 1983). It may not be used to discover the evidence which the government intends to introduce at trial. Gabriel, 715 F.2d at 1449; United States v. Matlock, 675 F.2d 981, 986 (8th Cir. 1982); United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). And it may not be used as a disguised attempt to obtain a list of witnesses. United States v. Anderson, 799 F.2d 1438, 1442 (11th Cir. 1986).

Given these parameters, "a bill of particulars should only be required where the charges in an indictment are so general that they did not advise the defendant of the specific acts of which he is accused." United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D. N.Y. 1988). Similarly, a bill of particulars is inappropriate where the information has been provided to the defendant elsewhere, such as in discovery or in other responses or pleadings. United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986). Simply put, a bill of particulars should not be required when the one seeking it has the means to otherwise ascertain the information. United States v. Skidmore, 123 F.2d 604, 607 (7th Cir. 1941).

The Indictment in the present case fully sets forth the RICO enterprise, its purposes, the respective roles of each RICO defendant, the manner and means of the conspiracy, and the pattern of racketeering activity. In addition, the Indictment sets forth the specific substantive

charges against each Defendant, in Counts 2 through 6. On its face the Indictment, therefore, informs the defendants of the charges pending against them and how those charges relate to the enterprise as a whole.

Moreover, the government, pursuant to Federal Rule of Criminal Procedure 16 and this Court's Standing Discovery Order, has made a significant amount of detailed information available to the defense. It has provided the defense with **all** of the conversations intercepted pursuant to the wiretap, and **all** of the consensual recordings, as well as transcripts of those conversations it intends to offer into evidence. These materials contain either statements or references to all co-conspirators either associated with the criminal enterprise or charged in the instant Indictment. Defendant's request for the identification of all unnamed co-conspirators is, therefore, satisfied by an analysis of these recordings.

Similarly, the Title III affidavits and applications, as well as search warrant affidavits and numerous other materials have long been provided to defense counsel. For example, defense counsel have been permitted to inspect **all** of the physical evidence the government has in its possession, including voluminous seized gambling records, collection ledgers and cooperating witness Polito's daily diary. In addition to these materials, this Court conducted a detention hearing at which detailed evidence regarding Rotunno's enterprise and extortionate extensions of credit was offered. These materials, combined with the clear and detailed language in the Indictment, are more than sufficient to advise Defendants of the specific acts with which they are charged and the names of any relevant co-conspirators.

## II. COUNT 2 OF THE INDICTMENT CORRECTLY SETS FORTH EACH ELEMENT OF THE OFFENSE CHARGED.

Zarcadoolas mounts a frivolous challenge to Count 2 of the Indictment and asserts that it does not properly charge a violation of 18 U.S.C. § 1955 because it states that the illegal gambling business had a gross revenue of $2000 on "one or more single days." Section 1955 requires the government to plead and prove *inter alia* that the gambling business was in substantially continuous operation for a period in excess of 30 days, or had a gross revenue of $2,000 or more in any single day. This element is properly set forth in the charging language of Count 2 of the Indictment, which reads "... [the illegal gambling business] had a gross revenue of two thousand dollars ($2,000) or more on one or more single days..." See United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982) (indictment is sufficient if it contains elements of the offense charged and fairly informs the defendant of the charge against which he must defend).

## III. COUNT 5 OF THE INDICTMENT CORRECTLY CHARGED DEFENDANTS WITH CONSPIRING TO VIOLATE THE MONEY LAUNDERING STATUTE, 18 U.S.C. § 1956(h).

Zarcadoolas asserts that Count 5 of the Indictment, charging himself and others with conspiring to lauder proceeds of illegal activity, is defective because the count as drafted is duplicitous and because it does not set forth an overt act. The money laundering statute, however, creates a single offense which may be violated by any one of three mental states. The indictment, therefore, correctly charged the conspiracy offense in the conjunctive and is not impermissibly duplicitous. Further, the conspiracy provision of the statute contains no overt act requirement and hence the government was not required to plead such an act.

The money laundering conspiracy at issue, set forth in Count 5 of the Indictment, charged

in sum that the defendants had conspired to violate Section 1956(a)(1) by conducting financial transactions involving the proceeds of illegal gambling businesses and extortionate extensions of credit, with the intent to promote the carrying on of these unlawful activities (§1956(a)(1)(A)(i)), and knowing that the transactions were designed to conceal the nature of the proceeds (§1956(a)(1)(B)(i)), all in violation of 18 U.S.C. §1956(h). (Ind. at 12-13). Section 1956(a)(1) sets forth alternative mental states by which its provisions may be violated – that is, by acting with the intent to promote the unlawful activities or by acting to conceal the nature of the proceeds. United States v. Navarro, 145 F.3d 580, 586-92 (3d Cir. 1998). Because Section 1956(a)(1) does not set forth separate offenses, its alternative mental states are properly charged as objects of the conspiracy. Navarro, 145 F.3d at 590-92; see also United States v. Carr, 25 F.3d 1194, 1201-02 (3d Cir. 1994) (multi-object money laundering conspiracy under § 1956(a)(1) and § 1956(a)(2) permissible); and cf. United States v. Holmes, 44 F.3d 1150, 1154-55 (2d Cir. 1995) (indictment charging separate substantive offenses under §1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii) impermissibly multiplicitous because defendant's multiple intents did not create multiple offenses).[3]

Lastly, Defendant complains that the form of Count 5 is defective because it does not include an overt act section. The plain language of the money laundering conspiracy statute, however, does not require that the government plead an overt act in furtherance of the conspiracy. As the Supreme Court has recognized, where the plain language of a statute does not require an overt act, such a requirement should not be inferred by the courts. United States v.

---

[3] The government further notes that the standard unanimity jury instruction should serve to alleviate any concerns the defendant may have regarding these alternative mental states. See Navarro, 145 F.3d at 592.

-7-

Shabani, 115 S.Ct. 382, 384-86 (1994). Indeed, in Shabani, the Supreme Court refused to read an overt act requirement, into the drug conspiracy statute, 21 U.S.C. § 846, in the absence of any such requirement in the statute's plain language. Section 846 was, of course, the model for the money laundering conspiracy statute at issue. Moreover, although not directly addressing Section 1956, the Eleventh Circuit recently followed the reasoning of Shabani in refusing to impose an overt act requirement on the conspiracy provisions of the Hobbs Act. United States v. Pistone, 177 F.3d 957, 960 (11th Cir. 1999) cert. denied 120 S.Ct 2748 (2000). The reasoning of Shabani and Pistone is directly applicable to Section 1956(h) and hence no overt act need be pled in the indictment.

### IV.   THE GOVERNMENT HAS PROVIDED ZARCADOOLAS WITH COPIES OF THE DEFENDANT'S RECORDED STATEMENTS IN ITS POSSESSION.

The government is aware of its obligations under Rule 16 of the Federal Rules of Criminal Procedure and this Court's Standing Discovery Order to provide the defense with all written or recorded statements of the defendant in its possession. The government has complied with this obligation.

### V.   DEFENDANTS' MOTIONS TO EXCLUDE CERTAIN RECORDED CONVERSATIONS ARE PREMATURE.

Both Defendant Zarcadoolas and Defendant Rotunno challenge the admission of certain conversations intercepted pursuant to the electronic surveillance and consensual monitoring conducted in the instant matter. Zarcadoolas moves to exclude, without any specificity, those conversations which refer to "Marty" in the absence of any other identifying reference (Zarcadoolas Mot. at 14); Rotunno moves to exclude those conversations in which the parties allegedly do not sufficiently identify the persons discussed or explain the subject matter

(Rotunno Mot. at 8).

Defendants' motions, however, are premature and infringe on the province of the jury by challenging in essence the weight to be given certain pieces of evidence. The jury is the ultimate finder of fact and can accept or reject the contents of any recorded conversation and its corresponding transcript. See United States v. Chalarca, 95 F.3d 239, 246 (2d. Cir. 1996); see also United States v. Nixon, 918 F.2d 895, 901-02 (11th Cir. 1990) (identity of speakers on wiretapped phone conversations is an issue reserved to the jury). At trial, the government intends to present the testimony of cooperating witness Albert Polito. Mr. Polito was a member of Rotunno's criminal enterprise and participated with Rotunno and others in the criminal activities charged in the Indictment. The electronic surveillance reflects Polito's conversations with Rotunno and other members of the criminal enterprise during the course of the conspiracy. Polito's testimony will serve to identify the co-conspirators voices and will place into context the substance of their conversations. The government anticipates that additional co-defendants will pled guilty prior to trial and will also offer testimony regarding the court authorized interceptions. Following this testimony, defense counsel are then free to explore on cross examination any challenge to the government's evidence including the subject matter and identity of persons discussed. At bottom, thus, defendants' motions are simply a pre-trial attempt to challenge to the relevance of certain pieces of evidence and, without surrounding witness testimony, are premature.

## VI. THE ORGANIZED CRIME TERMS SET FORTH IN THE INDICTMENT ARE RELEVANT TO THE CRIMES CHARGED AND ARE PROPERLY INCLUDED.

Defendant argues that the Indictment's reference to organized crime is prejudicial surplusage which should be stricken by this Court. Contrary to Defendant's blanket statements, the challenged terms are relevant to the crimes charged and are, therefore, properly included in the Indictment.

Rule 7(d) of the Federal Rules of Criminal Procedure reserves to a district court's sound discretion the ability to strike surplusage from an indictment. United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990); United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993). Such motions should be granted, however, "only if the targeted allegations are clearly not relevant to the charge and are inflammatory and prejudicial." United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990). It is an exacting standard which is met only in rare cases. Huppert, 917 F.2d at 511. Indeed, courts have repeatedly held that if the language in the indictment is information which the government hopes to prove at trial and is legally relevant, "it cannot be considered surplusage no matter how prejudicial it may be." Moss 9 F.3d at 550 (citing United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989).

For these reasons, courts have long upheld references to organized crime as well as a defendant's role within the LCN, despite the potential for prejudice, where the use of those terms is germane to the crimes charged. See Scarpa, 913 F.2d at 1013 (upholding reference to Colombo Organized Crime Family in indictment where allegations of organized crime connections served to identify the enterprise and the means by which its members and associates conducted various criminal activities); United States v. Hickey, 16 F.Supp.2d 223, 234

-10-

(E.D.N.Y. 1998) (indictment's reference to LCN relevant to the conspiracy charged in indictment); United States v. Andrews, 749 F.Supp. 1517, 1519 (N.D. Illinois 1990) (indictment's reference to street gangs, enforcers and hit men relevant to RICO conspiracy charge); United States v. Rastelli, 653 F.Supp. 1034, 1055 (E.D.N.Y. 1986) (same finding with respect to "mafia," "La Cosa Nostra," and "Bonanno Crime Family"); United States v. Santoro, 647 F.Supp. 153, 176-77 (E.D.N.Y. 1986) (same finding with respect to "Lucchese Crime Family," "boss," "underboss," "capos," and "crews"); United States v. Persico, 621 F.Supp 842, 860 (S.D.N.Y. 1985) (same finding with respect to "organized crime," "crews," "bosses," "capos," "soldiers," and "made members). In fact, in Defendant's separately filed motion to sever, previously denied by this Court [DE 327], Zarcadoolas concedes that the government is permitted to establish the organization and structure of a La Cosa Nostra Family. (Def. Mot. to Sever at 4). Despite this concession, Defendant here argues that organized crime references should be stricken from the Indictment as unnecessarily prejudicial because he is not himself a member of the charged LCN family. Defendant's argument, however, ignores his charged association with members of that Family and on that basis alone is without merit.

In addition, however, Count 1 of the Indictment requires the government to establish, beyond a reasonable doubt, that the members of the charged enterprise not only associated together, but that the enterprise had some form of structure, formal or informal, which suggests that it would continue to exist and function beyond the commission of the racketeering acts already committed. See Turkette, 452 U.S. 576, 584 (1981). It is not enough to simply prove that Rotunno and his crew associated together and committed a series of crimes; the government must prove the existence of the enterprise separate and apart from the pattern of racketeering in

which it engaged. Id.

The government will prove the enterprise element of these charges in part through the testimony of witnesses that there exists in the United States a clandestine criminal organization known to its members as the "La Cosa Nostra," or "mafia;" that the La Cosa Nostra has "families" in cities throughout the United States, including a "family" in New York called the "Colombo Family;" that during all times relevant to this indictment the Colombo Family operated illegal activities in South Florida through its "South Florida Crew;" that Rotunno supervised this crew on behalf of the Family; that Rotunno associated with Zarcadoolas and others to commit and maintain control over various criminal activities in South Florida; and that Rotunno used his affiliations with the Colombo LCN Family in order to facilitate the criminal activities of the enterprise. Given the nature of the criminal organization in which Zarcadoolas and Rotunno willfully participated and the elements of the crimes charged in this indictment, the government may properly present evidence regarding the history and continuity of the enterprise, as well as the roles within it played by the defendants and their associates. The challenged terms are, therefore, properly included in the instant indictment and are entirely relevant.

Zarcadoolas also objects to the inclusion in the indictment of his alias "Marty." The evidence at trial will establish that Defendant was almost uniformly referred to as "Marty" by his associates, rather than by his formal given name Martin. The inclusion of the alias is, therefore, relevant and permissible. This is especially true since the nomer "Marty" is a common nickname for Martin which carries no prejudicial stigma. That another Martin is also named in this Indictment has no impact on this analysis, as the government will bear the burden at trial of establishing that the speakers, through the use of the term "Marty" are referring to defendant

Zarcadoolas.

### VII. Zarcadoolas's Motion to Exclude Derogatory Characterizations from Tape Recordings is Insufficient

Zarcadoolas moves this court to exclude from his intercepted conversations racially and ethnically derogatory remarks made by himself and others. Defendant, however, has not identified with any level of specificity these statements. The government, therefore, is unable to assess the probative value or relevance of these remarks, if any. In addition, the government notes that a review of the recordings reflects that at times the co-conspirators use of profanity and racially derogatory comments is inextricably intertwined into their conversations and it is, therefore, virtually impossible to delete these references. Given this constraint and the lack of specificity in Defendant's motion, the United States is unable to adequately respond to Defendant's motion and respectfully requests that the Court direct the defendant to either withdraw his motion or identify with specificity the statements to which his motion is intended to apply.

### VIII. Zarcadoolas's Request for Specific Kyles/Brady/Agurs/Giglio/Napue Material

The government is aware of its discovery obligations under Federal Rule of Criminal Procedure 16, the Court's Standing Discovery Order, and Supreme Court precedent. It has complied with the same, and is continuing to do so when additional information comes to its attention. In the absence of any specificity or allegation by Defendant that the government has failed to comply, his motion should be denied.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court deny the defendants' motions in all respects.

DATED this _____ day of September 2000.

          Respectfully Submitted,

          GUY A. LEWIS
          UNITED STATES ATTORNEY

By:   Paul F. Schwartz
      Assistant United States Attorney
      Court ID # A5500086

      Julia J. Stiller
      U.S. Department of Justice Trial Attorney
      Court ID # A5500485
      500 E. Broward Blvd., 7th Floor
      Fort Lauderdale, Florida 33394
      (954) 356-7255

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the below named on this _____ day of September, 2000.

Allen Kaufman, Esquire
2900 N. Dixie Highway, Suite 201
Oakland Park, FL 33334
(Counsel for Reynolds Maragni)

Philip R. Horowitz, Esquire
Southpark Centre
12651 S. Dixie Highway
Miami, FL 33156
(Counsel for James Travers)

H. Dohn Williams, Esquire
721 N.E. 3rd Avenue
Fort Lauderdale, FL 33304
(Counsel for Joseph Rotunno)

Raymond Miller, Esquire
400 Southeast Sixth St.
Fort Lauderdale, FL 33301
(Counsel for Martin Zarcadoolas)

William Norris, Esquire
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133-4741
(Counsel for Percy Morris)

David Vinikoor, Esquire
420 S.E. Twelfth St.
Fort Lauderdale, FL 33316
(Counsel for Martin Zarcadoolas)

Dennis R. Bedard, Esquire
1717 N. Bayshore Dr., Suite 102
Miami, FL 33132
(Counsel for Bert Caskill)

John Cotrone, Esquire
509 S.E. 9th St.
Fort Lauderdale, FL 33316
(Counsel for Michael Eddy)

James Stark, Esquire
524 S. Andrews Ave., Suite 304N
Fort Lauderdale, FL 33301
(Counsel for Gary Braeseke)

Michael Dutko, Esquire
600 South Andrews Ave., Suite 500
Fort Lauderdale, FL 33301
(Counsel for Kaiser Akel)

Ted Klein, Esquire
800 Brickell Avenue, Penthouse #2
Miami, FL 33131
(Counsel for Martin Halpern)

Thomas D. Sclafani, Esquire
200 East Broward Blvd., Suite 1210
Fort Lauderdale, FL 33301
(Counsel for Richard D'Onofrio)

Simon T. Steckel, Esquire
701 Brickell Ave., Suite 3260
Miami, FL 33131
(Counsel for William Hawkins)

Herb Cohen, Esquire
200 S.E. 6th St., Suite 205
Fort Lauderdale, FL 33301
(Counsel for Scott Miller)
(Counsel for Daniel Meisel)

Martin Bidwell, Esquire
Federal Public Defender's Office
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, FL 33301-1100
(Attorney for Emro Capri)

Larry Bronson, Esquire
80 Pine St., 32nd Floor
New York, NY 10005
(Counsel for Barbara Drezek)

Michael Hursey, Esquire
One River Plaza
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301-1853
(Counsel for Jeanne Brooks)

_____
JULIA J. STILLER
TRIAL ATTORNEY