UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARTIN ZARCADOOLAS, et al., | ) |
| Defendants. | ) |



### GOVERNMENT'S MOTION TO RESOLVE ALL TAPE RECORDING RELATED ISSUES AND INCORPORATED MEMORANDUM OF LAW

The United States of America, by and through its undersigned attorneys, hereby files this Motion to Resolve All Tape Recording Related Issues, and respectfully requests that the Court conduct a pre-trial hearing, pursuant to Fed. R. Ev. 104, to resolve any issue regarding the admissibility of the electronic surveillance and consensual monitoring tape recordings the government intends to offer at trial.

### PROCEDURAL HISTORY

At trial, the government will offer into evidence approximately 60 audiotapes of conversations intercepted both pursuant to electronic surveillance and consensual monitoring, along with corresponding transcripts. These tapes and transcripts have been previously made available to the defendants and reflect the defendants' participation in the criminal enterprise charged in the indictment. To date, the defendants have filed no challenge to either the admissibility of the tapes or the accuracy of the transcripts.

Because the recordings described above are relevant to the offenses charged in the indictment, the government respectfully requests that the Court conduct a pre-trial hearing,



pursuant to Fed. R. Ev. 104, to resolve any issue regarding the admissibility of these recordings. Such a hearing is necessary in order to avoid the needless waste of the jury's time while the Court considers issues on which it has sole authority. The Court's pre-trial determination of these issues, outside the presence of the jury, is the preferred way to handle challenges to the accuracy and audibility of tape recordings. See United States v. Carbone, 798 F.2d 21, 25 (1st Cir. 1986). In order to effectively conserve the Court's time at this hearing, the government further requests that the Court direct each defendant to specify his particular objections, if any, to the admission of these recordings prior to the commencement of the hearing.[1]

## MEMORANDUM OF LAW

I.   Admissibility of Tape Recordings

   a.   Authenticity

The Fifth Circuit, in United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977), established the controlling criteria that the government must satisfy before introducing sound recording evidence.[2] Specifically, Biggins requires, as a general rule, that the government must provide proof regarding the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording

---

[1] The government notes that defendant Zarcadoolas filed a pre-trial motion requesting an enlargement of time in which to file objections to the government's transcripts. By Order dated September 12, 2000, the Court granted Defendant an additional two weeks in which to file corrected transcripts. To date, the defendant has not filed any objection to the government's transcripts.

[2] In developing these criteria, the Court declined to adopt the stringent test established by the Eighth Circuit in United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975).

2

and the identification of the relevant speakers.³ Id. However, Biggins instructs that if the trial court independently determines that a particular recording accurately reproduces the auditory evidence, then the court has the discretion to admit it without a "formalistic adherence to the standard [established by the Fifth Circuit]." Id. at 67.

Both direct and circumstantial evidence may be used to determine the accuracy of the tape recordings. See United States v. Bright, 630 F.2d 804 (5th Cir. 1980). The government is not required to establish to an absolute certainty that the recording has not been changed but instead is obliged to show only that there is a reasonable probability that the tape has not been altered. Id. at 819, citing United States v. Haldeman, 559 F.2d 31 (D.C. Cir. 1976), cert. denied, 431 U.S. 933 (1977). Accord United States v. Shabazz, 724 F.2d 1536, 1539 (11th Cir. 1984). Where the government establishes, through testimony, that the offered recordings are actual reproductions of conversations that have occurred, it is not required to prove chain of custody. See United States v. McCowan, 706 F.2d 863 (8th Cir. 1983), citing United States v. Derring, 592 F.2d 1003 (8th Cir. 1979); United States v. Mahone, 537 F.2d 922, 930 (7th Cir.), cert. denied, 429 U.S. 1025 (1976).

The authenticity of the recording may be established by a witness testifying that the tape accurately depicts the conversations recorded. See Louis Vuitton, 765 F.2d at 973. The

---

³ The Biggins court found that the burden of establishing this criteria was appropriately placed on the government, in part, because a defendant "will often hear the tape recording for the first time in court." Id. By contrast, in the current case, the defendants have had access to the recordings and have had ample opportunity to review all of the recorded evidence that will be offered at trial. Moreover, courts have implied that the Biggins foundation should be relaxed where the party opposing the admission of the tapes does not make a well-founded accusation of impropriety or inaccuracy. See, e.g., United States v. Shabazz, 724 F.2d 1536, 1539 (11th Cir. 1984); Louis Vuitton v. Spencer Handbags Corp., 765 F.2d 966, 974 (2d Cir. 1985).

3

authenticating witness need not necessarily be someone who participated in or personally overheard the subject matter of the recording. See United States v. Rengifo, 789 F.2d 975, 978 (1st Cir. 1986); United States v. Fuentes, 563 F.2d 527, 532 (2d Cir.), cert. denied, 434 U.S. 959 (1977). Instead, circumstantial evidence may be sufficient to authenticate the conversation. See Rengifo, 789 at 978; United States v. Cortelleso, 663 F.2d 361, 364 (1st Cir. 1981), cert. denied, 444 U.S. 1072 (1980); United States v. Millan, 817 F. Supp. 1072 (S.D.N.Y. 1993). The First Circuit, in Rengifo, noted that a sufficient foundation for the admission of recorded conversations was established when the government offered a witness who, although he had not heard or participated in the recorded conversations, had supervised the wiretap from the day it was authorized and was able to provide a detailed and particular knowledge of the interception procedures used and the activities of the agent who manned the listening post. See Rengifo, 789 F.2d at 978-79.

Voice identifications also may be satisfied by direct or circumstantial evidence. To establish the identity of the relevant speakers, a witness' familiarity with the voice sought to be identified is sufficient to ensure the reliability of the identification. The witness may have developed familiarity with the voice either before or after the time of the recording. See Biggins, 551 F.2d at 68, citing Fed. R. Ev. 901(b)(5). Courts have upheld voice identifications made through a variety of methods as exemplified by the Ninth Circuit in United States v. Scully, 546 F.2d 255 (9th Cir. 1976), cert. denied, 430 U.S. 970 (1977).

In Scully, the Ninth Circuit upheld the government's authentication foundation over the appellants' contention that the government failed to produce sufficient evidence to identify the six speakers in the conversations. Id. These identifications resulted from a variety of means. An

4

agent identified two of the voices based on his personal conversations with the individuals involved as well as his hearing them speak on other occasions. Id. at 270. A third voice was identified by an agent who compared the voice to the voice as played on a tape which was previously authenticated. Id. Circumstantial evidence was used to authenticate the three other voices. Id. ' The Ninth Circuit upheld all methods of authentication used by the government. Id.

Similarly a "telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." See Advisory Committee notes to Rule 901(b)(4). Courts have endorsed authentication of speakers based upon evidence of the context and timing of a call or the speaker's response in a manner expected due to an earlier communication. See, e.g., United States v. Espinoza, 641 F.2d 153, 170 (4th Cir. 1981)(approval of the use of circumstantial evidence "to identify [the defendant] as the person" with whom a witness had spoken on the telephone regarding an order for "kiddie porn").

Finally, in the Biggins analysis, to establish the competency of the operator and the fidelity of the recording equipment, the fact that the recording was successfully made will suffice. See McCowan, 706 F.2d at 863. After the government establishes the proper Biggins foundation for the admissibility of the recordings, the defendant has the burden of rebutting that foundation. See United States v. Sarro, 742 F.2d 1286, 1292 (11th Cir. 1984), citing United States v. De La Fuente, 548 F.2d 528, 533-34 (5th Cir.), cert. denied, 434 U.S. 932 (1977).

In the current case, the government will be offering duplicated recordings of the original taped conversations. Where the government establishes through testimony that the duplicate recordings are exact recordings of conversations contained in the original tapes, they are

5

admissible. See United States v. DiMatteo, 716 F.2d 1361, 1368 (11th Cir. 1983), cert. denied, 469 U.S. 1101 (1985). The burden of raising a genuine issue as to the authenticity of the originals is on the party opposing admission. Id., citing United States v. Georgalis, 631 F.2d 1199, 1205 (5th Cir. 1980). See also United States v. Whitaker, 372 F. Supp. 154 (M.D.Pa. 1974) (finding summary tapes of wiretap conversations admissible where the defendants failed to show inaccuracy), affirmed, 503 F.2d 1400 (3rd Cir. 1974), cert denied, 419 U.s. 1113 (1975); United States v. Riccobene, 320 F. Supp. 196 (E.D.Pa. 1970)(copies of tape recordings admissible where defendants failed to show inaccuracy), affirmed, 451 F.2d 586 (3d Cir. 1971). Testimony that a copy of a recording accurately reflects the conversation will suffice to overcome a non-specific objection based on the fact that a duplicate, and not the original, is being introduced. See DiMatteo, 716 F.2d at 1368.

b.  Audibility

Another criterion for admission is that the tapes be sufficiently audible and comprehensible for the jury to consider their contents. See United States v. Slade, 627 F.2d 293, 301 (D.C. Cir.), cert. denied, 449 U.S. 1034 (1980). For example, gaps or inaudible portions do not constitute a bar to admissibility unless they are so substantial as to render the entire recording untrustworthy. See United States v. Lively, 803 F.2d 1124, 1129 (11th Cir. 1986). See also United States v. Llinas, 603 F.2d 506, 508 (5th Cir. 1979), cert. denied, 444 U.S. 1079 (1980). Inaudibility goes to the weight rather than the admissibility of audiotapes. United States v. Vega, 860 F.2d 779, 790 (7th Cir. 1988). Further, when a recording is offered only to show that a conversation occurred between the parties, the fact that substantial portions of the conversations are unintelligible should not cause its exclusion. See James G. Carr, The Law of Electronic

Surveillance, 450 (1977).

The trial court has broad discretion in determining whether to allow an imperfect recording into evidence. In United States v. Harrell, 788 F.2d 1524 (11th Cir. 1986), the appellants challenged the trial court's refusal to omit certain tapes from evidence based on imperfections on the tapes. The court upheld the admission of the tapes into evidence in spite of the imperfections where the trial court fully satisfied the authenticated requirements set forth in Biggins. Id. at 1527.

In United States v. Wilson, 578 F.2d 67, 69 (5th Cir. 1978), the Fifth Circuit noted the standard to be applied in cases in which problems of tape unintelligibility exist:

> Tape recordings which are only partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. The initial decision whether to admit into evidence a recording containing inaudible or unintelligible portions is committed to the sound discretion of the trial court. Here, the district court listened to the tape and recognized that some of the conversation was not intelligible, but found that a sufficient portion was understandable and had enough probative value to warrant its admission. After carefully listening to the tape, we agree with the district court's decision to admit the tape. While some portions of the recording are inaudible and unintelligible, much of it can be heard clearly. Certainly, defendants have not shown an abuse of the district court's discretion.

In United States v. Robinson, 763 F.2d 778 (6th Cir. 1985), the appellants challenged the trial court's admission into evidence of partially inaudible recordings of conversations which occurred in a defendant's judicial chambers. The court upheld the admission of the tapes into evidence despite the background noises which rendered portions of the tape recordings inaudible. Id.

Given the inherent difficulties in the ability of recording equipment to produce flawless recordings, courts will allow a party offering taped evidence to use certain techniques designed to

improve clarity. Filtering a tape to improve audibility and comprehension is no bar to admissibility. See Slade, 627 F.2d at 301; United States v. Craig, 573 F.2d 455, 477-79 (7th Cir. 1977). Audibility is often affected by background noise, accents and speaking speeds of the speakers, deafness of the listener, slang, weather conditions, etc. Filtering, use of earphones and/or use of transcripts are all acceptable ways to improve audibility and/or comprehension. See Haldeman, 559 F.2d at 54, n. 15; United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973); Fountain v. United States, 384 F.2d 624, 631 (5th Cir. 1967), cert. denied, 390 U.S. 1005 (1968). Finally, if by using a transcript a person is better able to hear and understand the conversation, then the tape's audibility has been established. See United States v. Kirk, 534 F.2d 1262, 1276-77 (8th Cir. 1976), cert. denied, 430 U.S. 906 (1977).

In summary, while an audio recording offered into evidence must be sufficiently clear and comprehensible to the jury in order to be admissible, imperfections alone will not justify exclusion. Moreover, clarity enhancing techniques will be allowed so long as they do not rise to the level of material manipulations.

II.    Use of Transcripts

The government intends to offer into evidence transcripts which correspond to the recordings it will also offer into evidence. Because the transcripts satisfy the Fifth Circuit's requirements for admissibility, they should be admitted during the course of the trial to assist the trier of fact.

In the seminal case of United States v. Onari, 535 F. 2d 938 (5th Cir. 1976), the Fifth Circuit set forth guidelines for admission of transcripts as aids to the jury during the playing of tape recordings. The Onari court instructed that the trial court should first attempt to devise a

8

"stipulated" transcript to which all parties can agree, preferably at a pre-trial conference. If no "official" transcript can be produced, then each side should be allowed to admit its own version of a transcript, for consideration by the jury as a matter of contested fact. In such an event, each party would be allowed to present evidence supporting the accuracy of its version. Id. at 949. Where, as here, the government has produced transcripts of tape recordings, it is each defendant's burden to challenge the accuracy of those transcripts by presenting the Court with his own version. See United States v. Cruz, 765 F.2d 1020 (11th Cir. 1985). His failure to do so precludes his objecting to the accuracy of the government's versions. Id.; See also, United States v. Rosenthal, 793 F.2d 1214 (11th Cir. 1986), cert. denied, 480 U.S. 919 (1987); United States v. Llinas, 603 F.2d 506 (5th Cir. 1979), cert. denied, 444 U.S. 1079 (1980); United States v. Wilson, 578 F.2d 67 (5th Cir. 1978).

Because the defendant has not objected to the government's transcripts, the government respectfully requests that the Court submit the transcripts offered by the government into evidence.

III.   Redactions

The government intends to offer into evidence redacted versions of the transcripts and recordings in this matter in order to shorten the trial and reduce the jury's exposure to irrelevant and unnecessary material. This plan is consistent with the Second Circuit's recognition that the government "is not required to play tapes in their entirety if the omitted portions are not necessary to clarify, or make not misleading, that which is introduced." See United States v. Weisman, 624 F. 2d 1118, 1128 (2d Cir.), cert. denied, 449 U.S. 871 (1980). Plainly stated, the government is not required to introduce portions of a statement which are irrelevant or

9

nonexplanatory of admitted passages. In the face of an objection under Fed. R. Ev. 106, the only portions which the defendant may properly seek to have admitted are those which must be relevant to the issues and then should be allowed only those parts which qualify to explain the subject matter of the portion offered by the government. United States v. Sweiss, 814 F.2d 1208, 1211 (7th Cir. 1986); United States v. Walker, 652 F.2d 708, 710 (7th Cir. 1981). Rule 106 "permits introduction only of additional material that is relevant and is necessary to qualify, explain or place into context the portion that was already introduced." See United States v. Pendas-Martinez, 845 F.2d 938 (11th Cir. 1988). As the redactions offered by the government are not violative of Rule 106 and are designed to save the time of the Court and the jury, the government respectfully requests that the Court permit their admission into evidence.

The undersigned have consulted with David Vinikoor and Raymond Miller, counsel for defendant Zarcadoolas, in an effort to reach stipulations regarding the authenticity of the tape recordings. Mr. Vinikoor has advised the undersigned that he is not authorized by his client to enter into any stipulations.

CONCLUSION

Wherefore, the government requests that this Court allow the admission of the audio recordings and transcripts offered by the government in this case; urges that the Court resolve any issues regarding the admission of such evidence outside the presence of the jury; and requests that the Court order the defendants to assert any specific objections which they may have to the admission of said evidence in the form proposed by the government prior to trial herein.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
Paul F. Schwartz
Assistant United States Attorney
Court I.D. #A5500086

_____
JULIA J. STILLER
U.S. Department of Justice Trial Attorney
Court I.D. # A5500485
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Telephone: (954) 356-7392
Facsimilie: (954) 356-7230

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the below named on this __/ 7__ day of October, 2000.

Allen Kaufman, Esquire
2900 N. Dixie Highway, Suite 201
Oakland Park, FL 33334
(Counsel for Reynolds Maragni)

Philip R. Horowitz, Esquire
Southpark Centre
12651 S. Dixie Highway
Miami, FL 33156
(Counsel for James Travers)

H. Dohn Williams, Esquire
721 N.E. 3rd Avenue
Fort Lauderdale, FL 33304
(Counsel for Joseph Rotunno)

Raymond Miller, Esquire
400 Southeast Sixth St.
Fort Lauderdale, FL 33301
(Counsel for Martin Zarcadoolas)

William Norris, Esquire
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133-4741
(Counsel for Percy Morris)

David Vinikoor, Esquire
420 S.E. Twelfth St.
Fort Lauderdale, FL 33316
(Counsel for Martin Zarcadoolas)

Dennis R. Bedard, Esquire
1717 N. Bayshore Dr., Suite 102
Miami, FL 33132
(Counsel for Bert Caskill)

John Cotrone, Esquire
509 S.E. 9th St.
Fort Lauderdale, FL 33316
(Counsel for Michael Eddy)

James Stark, Esquire
524 S. Andrews Ave., Suite 304N
Fort Lauderdale, FL 33301
(Counsel for Gary Braeseke)

Michael Dutko, Esquire
600 South Andrews Ave., Suite 500
Fort Lauderdale, FL 33301
(Counsel for Kaiser Akel)

Ted Klein, Esquire
800 Brickell Avenue, Penthouse #2
Miami, FL 33131
(Counsel for Martin Halpern)

Thomas D. Sclafani, Esquire
200 East Broward Blvd., Suite 1210
Fort Lauderdale, FL 33301
(Counsel for Richard D'Onofrio)

Simon T. Steckel, Esquire
701 Brickell Ave., Suite 3260
Miami, FL 33131
(Counsel for William Hawkins)

Herb Cohen, Esquire
200 S.E. 6th St., Suite 205
Fort Lauderdale, FL 33301
(Counsel for Scott Miller)
(Counsel for Daniel Meisel)

Martin Bidwell, Esquire
Federal Public Defender's Office
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, FL 33301-1100
(Attorney for Emro Capri)

Larry Bronson, Esquire
80 Pine St., 32nd Floor
New York, NY 10005
(Counsel for Barbara Drezek)

Michael Hursey, Esquire
One River Plaza
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301-1853
(Counsel for Jeanne Brooks)

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY