UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6154-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) |
| MARTIN ZARCADOOLAS, | ) |
| BERT CASKILL, | ) |
| | ) |
| Defendants. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' REQUEST FOR NOTICE OF INTENT TO OFFER RULE 404(b) EVIDENCE

The United States by and through its undersigned attorneys, hereby responds to defendant's request for notice of the government's intention to introduce evidence of "other crimes, wrongs or acts" under Rule 404(b) of the Federal Rules of Evidence.

### INTRODUCTION

On June 6, 2000, following a two year investigation involving the use of court authorized wire interceptions, the execution of several search warrants and the placement of a high level cooperating witness, a federal grand jury returned a six-count indictment charging Joseph Rotunno, Martin Zarcadoolas, Bert Caskill and fifteen others with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d) (Count 1), conducting an illegal gambling business in violation of 18 U.S.C. § 1955 (Count 2), conspiring to make and collect extortionate extensions of credit in violation of 18 U.S.C. §§ 892

-1-



and 894 (Counts 3 & 4), conspiring to commit money laundering in violation of 18 U.S.C. § 1956 (Count 5), and conspiring to sell and receive stolen property in violation of 18 U.S.C. § 2315 (Count 6).[1] Count One of this indictment, the RICO conspiracy count, requires proof of an enterprise – that is, proof that the defendants associated togther as an ongoing formal or informal organization, which functioned as a continuing unit. To establish the enterprise, the government must offer evidence regarding the history, formation, structure and continuing character of the enterprise. Although some of this evidence relates to crimes, wrongs and acts that are not specifically charged as objects of the conspiracy, such acts do not fall within the ambit of Rule 404(b) because the act are directly relevant as proof of the enterprise and the conspiracy.

## DISCUSSION

1.  The Enterprise Element:

The RICO statute delineates three predominate elements:"(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Salinas v. United States, 118 S.Ct. 469, 476 (1997). In proving a RICO violation, the enterprise element at all times remains a separate element which must be established by proof beyond a reasonable doubt. See United States v. Turkette, 452 U.S. 576, 580-81 (1981). It is defined as "any individual, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As is indicated by this language, there are no restrictions on the types of associations embraced by the definition; an enterprise may include any group of individuals "associated in fact," whether for legitimate purposes or solely for the purpose of

---

[1] The substantive offenses enumerated in Counts 2 through 6 of the Indictment also make up the pattern of racketeering activity alleged under the RICO Conspiracy charged in Count 1.

-2-

engaging in criminal conduct. Turkette, 452 U.S. at 580-81. A group of persons "associate in fact" where they share a common purpose of engaging in a course of conduct. Id. at 583. This common purpose may be illustrated by evidence "of an ongoing organization, formal or informal, and by evidence that the various associates function[ed] as a continuing unit." Id.

It is important to note that the 'enterprise' is not the 'pattern of racketeering activity;' the enterprise is an entity separate and apart from the pattern of activity in which it engages. Id. For example, the enterprise element is proven by evidence of an ongoing organization; the pattern of racketeering activity element by evidence that participants in the enterprise committed the requisite number of racketeering acts. Id. Thus, "while the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other." Id.

In establishing the enterprise element, the government may offer evidence which demonstrates the history, formation, structure and internal discipline of the enterprise, as well as the regular means by which its members and associates conducted unlawful business. See United States v. Eufrasio, 935 F.2d 553, 573 (3d Cir. 1991). The scope of the permissible offer of proof is, therefore, necessarily broad. For example, in United States v. Miller, 116 F.3d 641 (2d Cir. 1997), cert. denied, 118 S.Ct. 2063 (1998), the government offered during the trial of the "Supreme Team" -- a violent RICO enterprise whose primary purpose was the distribution of crack cocaine -- evidence of numerous uncharged murders committed by the Supreme Team security force. Id. at 682. On appeal, the defendants challenged the district court's admission of the evidence arguing that since the murders had not been alleged in the indictment, evidence concerning the killings should have been excluded under Federal Rule of Evidence 404(b). Id.

The Second Circuit rejected the defendants' attempts to categorize the uncharged murders as 404(b) material, finding that the evidence was offered not as evidence of "other acts," but rather as proof of the existence and nature of the RICO enterprise.

Similarly, in United States v. Salerno, 108 F.3d 730 (7th Cir.), cert. denied, 117 S. Ct. 2517 (1997), the government offered, during the defendant's VCAR trial, evidence of the defendant's prior participation in demanding and collecting street taxes on behalf of the Ferriola Street Crew in an effort to establish the charged enterprise. Id. at 738. The defendant challenged the admission of the evidence on the ground that it concerned uncharged 404(b) acts and was unfairly prejudicial. Id. The Seventh Circuit, rejected the defendant's Rule 404(b) challenge, finding that because the "enterprise was an essential element of the crimes charged, the proffered evidence [could] not properly be characterized as 'other crimes evidence' within in the meaning of Rule 404(b)." Id.

The court went on to find that the evidence was not unfairly prejudicial under Rule 403. Citing Turkette, the court noted that a party proves an enterprise through evidence of an ongoing organization and by evidence that the various associates of the organization functioned as a continuing unit. Id. at 739. Noting that "it is difficult to comprehend how one could prove the existence of an enterprise comprised of 'a group of individuals associated in fact,' and organized solely for the purpose of committing crimes, without presenting evidence of the crimes that detail the structure, common purpose, and continuity of the charged enterprise," the court found that the challenged testimony provided evidence of the leadership within the enterprise, the scope of the enterprise, the specialized functions of the various crew members, the crew's method of collecting the street tax, the crew's desire to tax independent brokers and the defendant's actual

participation in the enterprise's activities. Id.; see also United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) (uncharged acts not within meaning of 404(b) and admissible as direct evidence of the conspiracy); United States v. Keltner, 147 F.3d 662, 668 (8th Cir. 1998) (holding that the government may prove the existence of an enterprise for purposes of RICO by introducing evidence not connected with the charges in the indictment); United States v. Tokars, 95 F.3d 1520, 1541 (11th Cir, 1996) (evidence related to dismissed counts of indictment admissible and relevant as evidence of enterprise); United States v. DiSalvo, 34 F.3d 1204, 1221 (3d Cir. 1994) (evidence of uncharged mafia criminal activity properly admitted to establish enterprise element); United States v. Thai, 29 F.3d 785, 812-13 (2d Cir. 1994) (evidence of uncharged robberies and violent acts properly admitted to establish the existence and structure of the enterprise, the leadership roles played by the defendants, and the discipline imposed on the rank and file members); United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (evidence of uncharged murders committed during mob war relevant to demonstrate the existence of the RICO enterprise); Jones v. Childers, 18 F.3d 899, 913 (11th Cir. 1994) (no error in admitting uncharged acts to prove continuity of civil RICO enterprise); United States v. Eufrasio, 935 F.2d 553, 573 (3d Cir. 1991) (evidence of uncharged Mafia crimes admissible to prove the existence and nature of the enterprise); United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)(evidence of wide variety of criminal acts committed by members of the organized crime group "the Westies" but not charged as predicate acts, properly admitted as "probative of the existence of the charged enterprise"); United States v. Gonzales, 921 F.2d 1530, 1546-47 (11th Cir. 1991) (defendants participation as a pilot in uncharged cocaine flights admissible to show continuity of racketeering activity); United States v. DeRosa, 670 F.2d 889 (9th Cir. 1982) (criminal activity of defendants

not alleged as predicate acts properly admitted to establish the existence of a criminal enterprise under Turkette").

2.  The Enterprise

In sum, here, the underlying indictment charges the existence of an association in fact enterprise comprised of that Rotunno, Zarcadoolas and others and alleges that the defendants were part of an enterprise associated with the South Florida Crew of the Colombo LCN family, a criminal organization operating in New York, South Florida and elsewhere. The indictment further charges that Defendant Rotunno was an associate of the Colombo Organized Crime Family, and from at least 1997 to the present, supervised, on the Colombo Family's behalf, its South Florida crew of criminal associates and their related activities, including racketeering, fraud, illegal gambling, extortion and money laundering, among other crimes.

To that end, in or about 1997, Rotunno began coordinating and supervising the activities of several illegal gambling businesses located in and around South Florida. Defendants Zarcadoolas and Caskill acted as agents of Rotunno's illegal gambling businesses and would place the bets of underlying clientele with various gambling offices including those controlled by Rotunno and other co-conspirators.

In addition, one of Rotunno's primary roles as supervisor of these gambling businesses was to collect either by himself or through other criminal associates, the gambling losses from bettors. He facilitated this collection by converting bettor losses into extortionate extensions of credit or loans at usurious rates averaging 3% interest per week, or 156% per annum. Initially, the bettors would make payments towards their loans by providing cash or checks to co-defendant Percy Morris, aka Tiny, -- Rotunno's strong-arm collector, -- who in turn, would

deliver the proceeds to Rotunno. When the debtors were unable to pay, Rotunno personally threatened the victims and instructed Morris to threaten harm, if necessary, to ensure the collection.

To collect the loses incurred by their betting clientele, Zarcadoolas and Caskill engaged the extortionate collection services of Rotunno. Lastly, the proceeds of these gambling losses and extortionate collections were laundered by Rotunno, Zarcadoolas, Caskill and others through various check cashing stores, including the business owned by co-defendant Kaiser Akel.

Beyond these illegal gambling businesses and their related activities, members of the enterprise also were responsible for the procurement of false identification documents on behalf of Rotunno and other co-conspirators, as well as the sale and receipt of stolen property.

To meet its burden of establishing the above enterprise, the government intends to offer evidence regarding the history, formation, structure and continuing nature of the charged enterprise. It will present evidence demonstrating that the Colombo Family is a hierarchical criminal organization which operates in South Florida through a crew of criminal associates who in turn generated profits from criminal activities for the benefit of the Colombo family.

With the above parameters in mind, the government intends to offer as proof of the existence and nature of the charged enterprise, evidence regarding the following:

1. The existence, nature and structure of the La Cosa Nostra in general and the Colombo LCN family in particular.

2. The association of Joseph Rotunno with the Colombo Family.

3. Rotunno and Zarcadoolas's attempts to obtain fraudulent immigration documents

on behalf of Chinese organized crime member Chung Cheung, aka "Gordon Chung," aka "Y."[2]

4.   The laundering of proceeds from PRSI, a white-collar Internet fraud scheme operated by Rotunno, by Zarcadoolas through co-defendant Kaiser Akel's check cashing store.[3]

5.   Zarcadoolas's participation in the laundering of gambling proceeds through co-defendant Kaiser Akel's check-cashing store, by vouching for the sufficiency of checks brought to the store by other bookmakers.[4]

Evidence of the above acts will be offered as evidence that the above persons associated together as "an ongoing organization, formal or informal," and "function[ed] as a continuing

---

[2] Evidence related to these attempts will stem from three conversations intercepted pursuant to the wiretap wherein Rotunno and Zarcadoolas discuss Cheung and their efforts to obtain fraudulent immigration documents on his behalf, as well as from the testimony of cooperating witness Albert Polito who will testify that both Zarcadoolas and Rotunno informed him that they were attempting to obtain these documents for Cheung. Defense Counsel were provided tapes and transcripts of these conversations as part of the initial discovery in this matter. These conversations are also in the government's exhibit list, previously provided to counsel.

[3] Counsel for Zarcadoolas and Caskill have been provided with copies of the relevant checks the government intends to offer at trial.

[4] It is noted that in addition to the evidence's relevance to the enterprise elements of Count 1, the acts set forth above, some of which are covered under the general allegations in the "Purposes" and "Manner and Means" sections of Count 1, are inextricably intertwined with the charged offense conduct. They are also independently relevant and admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident under Rule 404(b).

unit" separate and apart from the pattern of racketeering activity alleged in the indictment.

Turkette, 452 U.S. at 583.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
Paul F. Schwartz
Assistant United States Attorney
Court I.D. #A5500086

_____
Julia J. Stiller
U.S. Department of Justice Trial Attorney
Court I.D. # A5500485
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to the below named on this __/9__ day of October, 2000.

Allen Kaufman, Esquire
2900 N. Dixie Highway, Suite 201
Oakland Park, FL 33334
(Counsel for Reynolds Maragni)

Philip R. Horowitz, Esquire
Southpark Centre
12651 S. Dixie Highway
Miami, FL 33156
(Counsel for James Travers)

H. Dohn Williams, Esquire
721 N.E. 3rd Avenue
Fort Lauderdale, FL 33304
(Counsel for Joseph Rotunno)

Raymond Miller, Esquire
400 Southeast Sixth St.
Fort Lauderdale, FL 33301
(Counsel for Martin Zarcadoolas)

William Norris, Esquire
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133-4741
(Counsel for Percy Morris)

David Vinikoor, Esquire
420 S.E. Twelfth St.
Fort Lauderdale, FL 33316
(Counsel for Martin Zarcadoolas)

Dennis R. Bedard, Esquire
1717 N. Bayshore Dr., Suite 102
Miami, FL 33132
(Counsel for Bert Caskill)

John Cotrone, Esquire
509 S.E. 9th St.
Fort Lauderdale, FL 33316
(Counsel for Michael Eddy)

James Stark, Esquire
524 S. Andrews Ave., Suite 304N
Fort Lauderdale, FL 33301
(Counsel for Gary Braeseke)

Michael Dutko, Esquire
600 South Andrews Ave., Suite 500
Fort Lauderdale, FL 33301
(Counsel for Kaiser Akel)

Ted Klein, Esquire
800 Brickell Avenue, Penthouse #2
Miami, FL 33131
(Counsel for Martin Halpern)

Thomas D. Sclafani, Esquire
200 East Broward Blvd., Suite 1210
Fort Lauderdale, FL 33301
(Counsel for Richard D'Onofrio)

Simon T. Steckel, Esquire
701 Brickell Ave., Suite 3260
Miami, FL 33131
(Counsel for William Hawkins)

Herb Cohen, Esquire
200 S.E. 6th St., Suite 205
Fort Lauderdale, FL 33301
(Counsel for Scott Miller)
(Counsel for Daniel Meisel)

Martin Bidwell, Esquire
Federal Public Defender's Office
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, FL 33301-1100
(Attorney for Emro Capri)

Michael Hursey, Esquire
One River Plaza
305 S. Andrews Avenue, Suite 701
Fort Lauderdale, FL 33301-1853
(Counsel for Jeanne Brooks)

Larry Bronson, Esquire
80 Pine St., 32nd Floor
New York, NY 10005
(Counsel for Barbara Drezek)

*[signature]*

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY